J-S07042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RICHARD SOTO, | : | |
| | : | |
| Appellant | : | No. 840 MDA 2016 |

Appeal from the Judgment of Sentence February 19, 2016
in the Court of Common Pleas of Dauphin County,
Criminal Division, No(s): CP-22-CR-0002599-2014

BEFORE:  BOWES, LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 13, 2017**

Richard Soto ("Soto") appeals from the judgment of sentence imposed following his convictions of rape of a child, involuntary deviate sexual intercourse ("IDSI") with a child, aggravated indecent assault of a child, indecent assault of a child under 13 years of age, unlawful contact with a minor, corruption of minors, and indecent exposure, arising from sexual offenses committed against his fiancé's daughter, M.M. (born in May 2005).[1] We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  ***See*** Trial Court Opinion, 8/26/16, at 1-7.

On appeal, Soto raises the following questions for our review:

---

[1] ***See*** 18 Pa.C.S.A. §§ 3121(c), 3123(b), 3125(b), 3126(a)(7), 6318, 6301, 3127.

I. Did [] the [trial] court abuse its discretion by failing to grant [Soto] a new trial on the basis that the guilty verdicts were against the weight of the evidence?

II. Did [] the [trial] court err in sustaining the Commonwealth's objection to [Soto's] introduction of evidence that other adult males were alone with the minor complaining witness?

III. Was the imposition of two consecutive sentences, resulting in an aggregate sentence of 20 to 40 years, clearly unreasonable, so manifestly excessive as to constitute an abuse of discretion, and inconsistent with the protection of the public, the gravity of the offenses, and [Soto's] rehabilitative needs?

Brief for Appellant at 7.

In his first claim, Soto argues that the trial court erred in failing to grant a new trial, where the verdicts were against the weight of the evidence. *Id.* at 33. Soto asserts that the "sole evidence of guilt was the testimony of [M.M.], a developmentally disabled female who was 8 years of age at the time of the alleged offenses." *Id.* at 34. Soto also claims that M.M.'s testimony was not corroborated by physical evidence. *Id.* Additionally, Soto contends that M.M. provided "confusing, non-specific, and inconsistent descriptions regarding the times on which the alleged offenses occurred[,]" and that even M.M.'s mother ("Mother") does not believe her. *Id.* at 34-35. Soto states that M.M. "was also deficient in describing the onset of the abuse." *Id.* at 36.

We observe the following standard of review:

The finder of fact—here, the jury—exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence. Issues of witness credibility include questions of inconsistent testimony and

- 2 -

improper motive. A challenge to the weight of the evidence is directed to the discretion of the trial judge, who heard the same evidence and who possesses only narrow authority to upset a jury verdict. The trial judge may not grant relief based merely on some conflict in testimony or because the judge would reach a different conclusion on the same facts. Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. On appeal, this Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight. Or review is limited to determining whether the trial court abused its discretion; the Court's role precludes any *de novo* consideration of the underlying weight question.

*Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011) (internal citations and quotation marks omitted); *see also Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (stating that "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." (citation omitted)).

Here, Soto asks us to substitute our judgment for that of the jury, and to reassess the credibility of M.M.'s testimony. From the verdict, it is apparent that the jury found M.M.'s testimony credible, and we may not reconsider the credibility of that testimony on appeal. *See Sanchez, supra*; *see also Gibbs, supra*. Because the evidence supports the jury's

- 3 -

verdict, and we discern no abuse of discretion by the trial court, this claim is without merit.

In his second claim, Soto asserts that the trial court erred in sustaining the Commonwealth's objection to evidence that other adult males had been alone with M.M. Brief for Appellant at 38. Soto contends that such evidence is relevant, because "it would have given rise to the inference that [M.M.'s] knowledge of sexual activity stemmed from interaction with someone other than [Soto]." *Id.* Specifically, Soto states that individuals known as "Percy" and "Uncle Chris" had also been alone with M.M. at various times. *Id.* Additionally, Soto claims that preventing him from presenting evidence of a third party's guilt would violate his constitutional right to present a complete defense. *Id.* at 40.

Our standard of review concerning the admissibility of evidence is well settled:

> With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record.

*Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015) (citation omitted).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015); *see also*

- 4 -

Pa.R.E. 402.  "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action."  Pa.R.E. 401; *see also Tyson*, 119 A.3d at 358 (stating that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.").  However, "[t]he court may exclude relevant evidence if its probative value is outweighed by the danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Pa.R.E. 403.

Here, Soto cites the Pennsylvania Supreme Court's decision in *Commonwealth v. Johnson*, 638 A.2d 940 (Pa. 1994), in support of his argument that evidence that "Percy" and "Uncle Chris" had also been alone with M.M. should have been admitted at trial.  In *Johnson*, our Supreme

J-S07042-17

Court held that, in a prosecution for sexual offenses, the Rape Shield Law[2] does not bar the admission of evidence regarding a prior sexual assault suffered by the victim. *Johnson*, 638 A.2d at 941; *see also id.* at 942 (stating that "[t]o be a victim is not 'conduct' of the person victimized."). However, "[i]f the offer of proof shows only that others in addition to the defendant had sexual contact with the victim, but does not show how the evidence would exonerate the defendant, evidence of prior sexual activity is inadmissible under the Rape Shield Law." *Commonwealth v. Fink*, 791 A.2d 1235, 1242-43 (Pa. Super. 2002).

The trial court considered Soto's second claim, and stated the following:

> This contention is merely a fishing expedition by [Soto,] and has no such relevance to the case at hand. In the instant matter, M.M. clearly testified that it was [Soto] … [who] was committing these horrendous acts upon her. She went into great detail about the acts as they occurred. There was no such mention of anyone else having done this to her. M.M. never mentioned [] a "Percy" or an "Uncle Chris" anywhere during her conversation

---

[2] The pertinent portion of the Rape Shield Law provides the following:

**§ 3104. Evidence of victim's sexual conduct**

**(a) General Rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a).

- 6 -

with the guidance counselor or representative from Children and Youth. [Soto] offered no evidence … that any other individual committed these acts upon M.M. The introduction of [] adult males other than [Soto,] who may have been alone with M.M. at one point in time (thus creating the inference that it was not [Soto who] harmed this little child)[,] has no relevancy to the outcome of this case.

Trial Court Opinion, 8/26/16, at 9.

Upon review, we agree with the trial court's conclusion that such evidence is not relevant to the instant case, as Soto merely asks us to infer that "Percy" and "Uncle Chris" also had the opportunity to have sexual contact with M.M. **See Fink**, 791 A.2d at 1242-43. Even if Soto had offered evidence that either of those men did, in fact, have sexual contact with M.M., Soto has failed to explain why such evidence would exonerate him. **See id.**; **see also Commonwealth v. Durst**, 559 A.2d 504, 506 (Pa. 1989) (concluding that counsel was not ineffective for failing to introduce evidence that others may have *also* had sexual contact with the victim, where "[i]t was not argued how this evidence would prove that [the defendant] did not commit the assaults," and where "there was more than enough evidence produced at trial" to support the trial court's finding that the defendant had committed the assaults); **Commonwealth v. Allburn**, 721 A.2d 366, 368 (Pa. Super. 1998) (stating that evidence of a minor victim's prior sexual contact with a third party minor was not admissible in a sexual assault prosecution to explain the victim's knowledge of sexual activity). Thus, Soto's second claim is without merit.

In his third claim, Soto contends that the trial court's imposition of consecutive sentences resulted in an unreasonable and manifestly excessive aggregate sentence.[3]  Brief for Appellant at 41.  Soto also claims that the trial court considered only the nature of the criminal conduct and need to protect others in imposing consecutive sentences, and failed to consider relevant mitigating evidence (*i.e.*, Soto's work history, lack of prior criminal record, and support of Mother and his children).  *Id.* at 43-44.  Additionally, Soto asserts that the trial court improperly "sentenced [] Soto more harshly because [M.M.'s] family found her story incredible."  *Id.* at 44.

Soto's claim challenges the discretionary aspects of his sentence.  *See* *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).  "It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal."  *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> We conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a

---

[3] Soto's prior record score was zero.  For rape of a child and IDSI with a child, the offense gravity score is 14.  The standard range of the sentencing guidelines recommends a minimum sentence between 72 months and the statutory limit.  *See* 204 Pa. Code § 303.16.  Each offense carries a maximum sentence of 40 years in prison.  *See* 18 Pa.C.S.A. §§ 3121(e)(1), 3123(d)(1).

fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

* * *

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Moury*, 992 A.2d at 170 (quotation marks and some citations omitted).

Here, Soto filed a timely Notice of Appeal, preserved his issue in his post-sentence Motion, and included a Rule 2119(f) Statement in his brief. Accordingly, we will review Soto's Rule 2119(f) Statement to determine whether he has raised a substantial question.

In his Rule 2119(f) Statement, Soto argues that his aggregate sentence, although within the sentencing guidelines, is manifestly excessive because the trial court failed to consider relevant mitigating factors. Brief for Appellant at 29-31. Soto also claims that the trial court relied on impermissible factors in imposing his sentence. *Id.* at 32.

"This Court has [] held that an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citing *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014)).

"Further, reliance on impermissible sentencing factors can raise a substantial question." **Commonwealth v. Dodge**, 77 A.3d 1263, 1273 (Pa. Super. 2013). Accordingly, we will consider the merits of Soto's claim.

Our standard of review of a challenge to the discretionary aspects of a sentence is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Robinson**, 931 A.2d 15, 26 (Pa. Super. 2007) (citation omitted).

The Sentencing Code provides that "the [trial] court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The trial court must also consider the sentencing guidelines. **See id.**; **see also Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008) (stating that "[w]hen imposing a sentence, the [trial] court is required to consider the sentence ranges set forth in the Sentencing Guidelines…."). Here, the sentence imposed for each charge falls within the standard range of the sentencing guidelines. **See** 204 Pa. Code § 303.16(a). Therefore, we may

only vacate Soto's sentence if "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2); *see also Raven*, 97 A.3d at 1254.

Initially, we observe that the sentencing court had the benefit of a pre-sentence investigation report. *See* N.T., 2/19/16, at 45 (wherein the trial court stated that it reviewed the pre-sentence investigation report prior to sentencing). "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988); *see also id.* (stating that "[h]aving been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.").

Additionally, our review of the record reveals that the trial court considered relevant mitigating factors prior to sentencing Soto. At the sentencing hearing, Soto stated that he loves Mother's children and would never do anything inappropriate to them. *See* N.T., 2/19/16, at 44. Thereafter, the trial court detailed its sentencing considerations, stating the following:

> I also consider that, [] Soto, as an adult, you violated your duty as a stepparent in this case. [M.M. is] not your natural child, and I recognize that. From listening to your children, I'm sure you love all of them very much, as they love you, and that's

quite obvious, and that's a good thing, but I believe you violated your duty as a stepparent to [M.M.]

Your conduct certainly violates community standards. That goes beyond any words I could ever utter. You've betrayed the trust that was placed in you to safeguard this child. You shattered, literally shattered the life of this child. There's no other way to say it. You shattered her life, totally, completely, unequivocally. You've shattered her life. You've robbed her of her innocence. You took advantage of a vulnerable child.

And you not only robbed her of her innocence and shattered her life, you stole the rest of her family away from her. The other siblings in that household that I'm sure she, being the younger one, looked up to, now from everything I've heard want nothing to do with her, and that's a terrible shame. It really is. So you stole everything from her. So I have to consider that in fairness as well.

N.T., 2/19/16, at 45-46. The trial court also expressed doubt regarding Soto's ability to be rehabilitated. **See** Trial Court Opinion, 8/26/16, at 11. Based upon the foregoing, the trial court imposed consecutive standard range sentences for Soto's rape of a child and IDSI with a child convictions.[4] Discerning no abuse of discretion by the trial court, we will not disrupt Soto's sentence on appeal.

---

[4] The consecutive nature of Soto's sentences, without more, does not necessitate the conclusion that Soto's sentence is manifestly excessive. **See Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa. Super. 2011) (stating that "[g]enerally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.") (citation omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017

AUG 31 2016

COMMONWEALTH OF PENNSYLVANIA

v.

RICHARD SOTO

: IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
: 2599 CR 2014
: (840 MDA 2016)
:
: CRIMINAL APPEAL

## MEMORANDUM OPINION

Richard Soto ("Appellant"/"Mr. Soto"/"Defendant") is appealing this Court's judgment of sentence.[1] This opinion is written pursuant to Pa.R.A.P. 1925(a).

## PROCEDURAL HISTORY

Following a jury trial commencing on November 4, 2016 and concluding on November 6, 2015, Appellant was found guilty of, rape of a child[2], involuntary deviate sexual intercourse[3], aggravated indecent assault of a child under 13[4], unlawful contact or communication with a minor[5], indecent assault of a child under 13[6], corruption of minors[7], and indecent exposure[8]. At Count 1, Appellant was sentenced to a period of incarceration for a term of not less than 120 months nor more than 240 months. At Count 2, Appellant was sentenced to a period of incarceration of not less than 120 months nor more than 240 months, to run consecutively to the sentence at Count 1. All other Counts to run concurrently with Count 2.[9] Defendant's total sentence was not less than 240 months (20 years) nor more than 480 months (40 years).

---

[1] *See* Sentencing Order, filed on February 23, 2016. Sentencing Hearing held on February 19, 2016.
[2] 18 Pa.C.S.A. § 3121.
[3] 18 Pa.C.S.A. § 3123.
[4] 18 Pa.C.S.A. § 3125.
[5] 18 Pa.C.S.A. § 6318.
[6] 18 Pa.C.S.A. § 3126.
[7] 18 Pa.C.S.A. § 6301.
[8] 18 Pa.C.S.A. § 3127.
[9] See Sentencing Order. Counts

1

A Post-Sentence Motion to Modify Sentence was filed on February 29, 2016. A Rule was issued upon the Commonwealth. Argument was held on April 4, 2016 and Appellant's post-sentence motion(s) were denied in its entirety on April 20, 2016. A timely Notice of appeal was filed on May 19, 2016. In compliance with this Court's Order directing Appellant to file a concise statement of matters complained of on appeal, Appellant filed a Statement of Errors Complained of on Appeal. The basis for the appeal has been expressed by Defendant's Statement of Errors Complained of on Appeal as follows:

1. The court abused its discretion in finding that the jury's verdict was not against the weight of evidence.

2. The Court erred in sustaining the Commonwealth's objection to Defendant's introducing evidence that one or more adult males other than Defendant were alone with the complainant at various times.

3. The Court's sentence was so manifestly excessive as to constitute an abuse of discretion.[10]

For the reasons set forth below, this Court finds that Appellant's judgment of sentence should stand.

## FACTUAL BACKGROUND

A jury trial was held in which Appellant was charged and found guilty of the above-mentioned crimes. The Commonwealth's first witness was Diane Higgins, a teacher at Reid Elementary in the Middletown School District.[11] Ms. Higgins was a supplemental learning teacher who taught M.M (subject minor Child) various subjects.[12] (N.T. 46) Ms. Higgins described M.M. as a pleasant individual who liked to follow directions and was able to work independently at times. (N.T. 48). In October, 2013, Ms. Higgins testified that M.M. was participating in a class

---

[10] Defendant's Statement of Errors Complained of on Appeal, filed July 19, 2016.

[11] Transcript of Proceedings, Jury Trial, November 4th, 5th, 6th, 2015, page 43 (hereinafter "N.T. ___").

[12] At the time of the drawing, M.M. was in second grade and seven years old. (N.T. 45-46)

2

project where M.M. was given a Frankenstein looking monster paper to draw on. (N.T. 49). After completing the drawing, M.M. kept her hands over her drawing[13]. (N.T. 50) Ms. Higgins noticed that M.M. had drawn a penis with a "whole bunch of yellow stuff coming out of it at the end." (*Id.*) At this point, Ms. Higgins asked to speak to M.M. in the hallway and Ms. Higgins decided to contact the guidance counselor. (N.T. 48, 54)

Anna Smith, the school guidance counselor, met with Ms. Higgins, was provided the drawing, and met with M.M the next day. (N.T. 73-77) Ms. Smith went down to the cafeteria and told M.M. that she wanted to talk to her and asked M.M. to join her in the second-floor conference room. (N.T. 78) Once in the second-floor conference room, Ms. Smith asked M.M. about the drawing. (N.T. 79) M.M. was a little reluctant at first but eventually told Ms. Smith that Rich (Appellant) "puts his winky in her mother and puts it in her." (N.T. 80) When asked what M.M meant by winky, she said penis[14]. (*Id.*) At this point, Ms. Smith decided to take M.M. back to her office where M.M. would be more comfortable. (N.T. 81) Ms. Smith was asking open-ended questions and was letting M.M. tell her side of the story. (N.T. 82) M.M. relayed to Ms. Smith that the acts occurred in her bedroom when her brother and sister were downstairs. (N.T. 82) M.M. also told her Mother about the horrendous acts but that her Mother did not believe her and that her Mother whooped her[15]. (N.T. 83)

Outside of purview of the jury, a competency hearing was held with M.M.[16] M.M. was found to be competent to testify to the jury. (N.T.M.M. 18) M.M. proceeded to testify in vivid detail to tragic events that happened to her. (*See generally N.T. at* 36-54). The Commonwealth showed M.M. a picture of her room and M.M. testified that is where she slept (on the bottom of a bunk

---

[13] The Commonwealth introduced the drawing as Commonwealth's Exhibit 1.

[14] M.M. also went on to explain that "sex" involved the "penis" and the "vagina".

[15] Ms. Smith also testified that M.M. was just talking to her and was telling her side of the story calmly. Only when it was mentioned that M.M. may have to talk to someone else did M.M. begin to get worried.

[16] A Competency Hearing with M.M. was heard following the testimony of Ms. Smith. M.M. was found to be competent to testify and M.M. proceeded to testify to the jury. A separate transcript was prepared. We will refer to this as Transcript of Proceedings, Testimony of M.M., Jury Trial, November 5, 2015 (hereinafter "N.T. M.M. ___").

3

bed). (N.T.M.M. 28) M.M. described that Appellant's head would lay on this bed in position to herself. *(Id. 36)*. M.M. described what happened when Appellant and she were lying in her bed as follows: "[m]y body started shaking just a little bit when he was trying to move back and forth with his thing – with his body parts." *(Id. 37)* M.M. testified that Appellant's Penis touched her body and that Appellant put his penis in her vagina. *(Id. 37, 38)* Appellant would move his body "up and down, up, down, up, down with his body and with his penis in [M.M.'s] vagina." *(Id. 38)* Appellant would tell M.M. to take off her pants and Appellant's pants would also be off. *(Id. 38)* M.M. testified that Appellant would shake his penis before putting it in her vagina. *(Id. 39)* M.M. testified that Appellant would "put his spit on his penis, and then – and then – and then he put it in my vagina. And then he keep going like this, and he keep going like this. Keep going up and down with it." *(Id. 39)*[17]

M.M. testified that his penis would be inside her vagina and that it felt bad when it was happening. *(Id. at 40)* Appellant's penis also touched the back of M.M.'s bottom. *(Id.)* M.M. went on to explain in vivid detail what Appellant did to her bottom: "Well, he did – he used his penis again. He used his penis again, and then he licked it. He used his spit and rub it all over, and then he put it in my bottom, and then he keep going back and forth, back and forth in my vagina." *(Id. 41)* Appellant told her to keep this a secret. *(Id. 42)* Appellant's penis also touched her mouth and M.M. described that she would lean her head back, open her mouth, and green stuff would come out of Appellant's penis. *(Id. 42, 42)* M.M. testified that she would either spit in the sink or the toilet and that the green stuff that came out of Appellant's penis tasted gooey and really hot and warm. *(Id.43)* M.M. testified that this did not happen on one occasion but happened "lots of different nights." *(Id.)* And that it occurred when her Mother was not at home and was at work and her sister was downstairs watching T.V. or playing outside. *(Id. at 44)*

---

[17] M.M. made indicating motions.

4

M.M. testified that she would turn her belly and her legs backwards, and Appellant would make her pull down her pants, he would shake his penis and lick it, and then he would put it in her and keep going this way. Up and down, forwards. (*Id.* 45) When M.M. attempted to tell her Mother, her Mother did not believe her and instead spanked her. (*Id.* 49) M.M. described in vivid detail the Monster picture that she had drawn. (*Id.* 50) M.M. drew a picture of a penis on this drawing because she could no longer keep it a secret. (*Id.* 52) Finally, when asked whether any part of Appellant's body touched any other part of M.M.'s body, M.M. responded as follows: "[h]is hands went – went in my private[18], and he licked his tongue. Well, he – he said he did – he took his hands and I said, "Ouch." And then he licked it to make it feel better." (*Id.* 54)

On cross-examination, the Defense introduced several photographs of M.M. and the Appellant. (*Id.* 68-75) These photos showed the Appellant and M.M. at the hospital, at the beach, and at a soccer game (*Id.*).

Ashley Johnson, a child protective services caseworker with Dauphin County Children and Youth, testified as to her involvement with M.M. (N.T. 107) Ms. Johnson received a report of allegations of sexual abuse and responded right away. (N.T. 107,108). Ms. Johnson responded went to the home of where M.M. had been staying and when she first arrived, M.M.'s Mother (S████████ S██ was there and that she (Ms. Johnson) gave oral notification to Ms. S█ that a report of child abuse has been made. (N.T. 111) Ms. Johnson testified that Ms. S█ then became defense. (N.T. 112) Ms. Johnson then called Middletown Police to inform them of the alleged child abuse. (N.T. 114, 115) A safety plan was implemented and the children (M.M. had a brother and a sister) were removed from the home (M.M. went to stay with her maternal grandmother). (N.T. 116)

---

[18] M.M. referred to her vagina has her private. N.T.M.M. 55

5

Detective Mark Hovan, of the Middletown Police Department, conducted an interview with M.M. at the Children's Resource Center on November 4, 2013. (N.T. 144) After the interview with M.M., Detective Hovan felt that immediate action was needed based off the detail, type of disclosure, and the believability of M.M. (N.T. 147-148) Detective Hovan contacted the Dauphin County District Attorney's Office and it was determined that Ms. S███ and Appellant needed to be interviewed (N.T. 149, 150) Detective Hovan testified that during Ms. S███ interview, she was defensive, upset with her daughter, self-serving, and showed no concern for the well-being of M.M. (N.T. 153) Detective Hovan gathered the bed sheets/comforter from M.M.'s room and Ms. S███ and Appellant's room. (N.T. 155) No seminal material was detected. (N.T. 157) However, Detective Hovan indicated that this is usually the case in a situation like this. (N.T. 160) Finally, on direct-examination, Detective Hovan testified to the tactics that Appellant used during his interview, how Appellant's demeanor did not change during the interview and that Appellant's reaction(s) to being accused were not normal. (N.T. 163-165)

Dr. Paula George, at the time of the incident was the medical director at the Children's Resource Center in Harrisburg, examined M.M.[19] (N.T. 200) Dr. George conducted a physical examination of M.M. and was not able to find any evidence of vaginal, anal, or oral penetration. (N.T. 201-202) However, Dr. George indicated that this result did not surprise her.[20] (N.T. 202-204) Dr. George testified that if an examination is not completed within 24 to 48 hours, minor abrasions or tears are likely to heal very quickly (N.T. 205)

S███ S██ (M.M.'s Mother) testified for the Defense. Ms. S██ testified that she thought Appellant and M.M. had a good relationship. (N.T. 222) Through her, more photos of M.M. and Appellant were introduced into evidence. (N.T. 223-226) Ms. S██ claims that M.M. never told her that this was happening and Ms. S██ claimed that she did not know this was happening. (N.T. 228-229) Ms. S██ testified that her family does not trust M.M. and gave an example of M.M. lying

---

[19] Dr. George was qualified as an expert. (N.T. 197)

[20] Dr. George testified that any such physical findings on children is very unusual. (*See generally*, N.T. 202-206)

6

(N.T. 236). Finally, on direct-examination, Ms. S██ indicated that she pled guilty to endangering the welfare of children because the District Attorney's Officer offered a deal. (N.T. 238) On cross examination, Ms. S██ indicated that when she worked late, Appellant was left in charge. (N.T. 245) Additionally, the Commonwealth asked Ms. S██ about her guilty plea. (N.T. 249-254)

Finally, Appellant took the stand to testify. Again, pictures of Appellant and M.M. were introduced and shown to the jury. (N.T. 285-289). Appellant testified that he was in complete shock and disbelief at the accusations. (N.T. 295) The video[21] of Appellant's interview with Detective Hovan was also played for the jury. (N.T. 302) The Appellant testified that this video shows his response and demeanor to the questions asked of him. (N.T. 303)

## DISCUSSION

Defendant's first allegation of error is that the court abused its discretion in finding that the jury's verdict was not against the weight of evidence. An appellate court reviewing a weight of the evidence claim uses the following standard of review:

'The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.'

Commonwealth v. Charlton, 902 A.2d 554, 561 (Pa.Super.Ct.2006) (quoting Commonwealth v. Champney, 832 A.2d 403, 408 (Pa.2003)).

A person is guilty of rape, a felony of the first degree, "when the person engages in sexual intercourse with a complainant ... who is less than 13 years of age." 18 Pa.C.S.A. §3121(c).

The Pennsylvania Superior Court has long since recognized "that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." Commonwealth v. Davis, 437

---

[21] Introduced as Defendant's Exhibit 10.

7

Pa.Super. 471, 650 A.2d 452, 455 (1994). "If the fact finder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict." *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa.Super.2000) (citation omitted).

Although the Appellant denied the allegations against him, the Commonwealth presented evidence that, if believed, established a finding of guilt on the above-mentioned crimes. In spite of family not believing in her, M.M. gave a compelling and detailed account of what the Appellant did to her. M.M.'s guidance counselor repeated the story of what M.M. told her. The jury was able to view the drawing of the "monster". The drawing depicted a part of an adult male's body in sexual arousal and emitting semen, arguably a bodily function that a seven year old female child would not be familiar with. The jury listened to testimony from Detective Hovan who testified how M.M.'s mother responded during her interview (in that she showed very little concern for her own daughter and was more worried about herself). Detective Hovan testified to the demeanor of the appellant and the jury was able to watch the interview and determine on their own whether Appellant was telling the truth or not. Detective Hovan also testified that there was not any semen found on the bed sheets and/or comforter but also testified that it is a rare occurrence to find such. Finally, although Dr. George testified that no penetration was found on M.M., Dr. George testified that it is very rare to find such an occurrence. Here, the jury found the victim's testimony credible and chose not to believe appellant's side of the story. It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge appellant guilty. *Commonwealth v. Gooding*, 818 A.2d 546 (Pa.Super.2003).

The Appellant's next allegation of error is that the Court erred in sustaining the Commonwealth's objection to Appellant's introducing evidence that one or more adult males other

8

than Defendant were alone with the complainant at various times. In regards to admissibility of evidence, the Pennsylvania Supreme Court has recently stated as follows:

> "The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. *Commonwealth v. Travaglia*, 611 Pa. 481, 28 A.3d 868, 873 (2011). A defendant has a fundamental right to present evidence, so long as the evidence is relevant and not subject to exclusion under our Rules of Evidence. *Commonwealth v. McGowan*, 535 Pa. 292, 635 A.2d 113, 115 (1993). Evidence is relevant if it tends to prove or disprove some material fact, or tends to make a fact at issue more or less probable. *Id.*

> It is well established that evidence which tends to show that the crime with which a defendant is charged was committed by someone else is relevant and admissible. *McGowan*, 635 A.2d at 115. In this regard, we recently explained that "the defense may introduce evidence that someone else committed a crime which bears a highly detailed similarity to the crime with which a defendant is charged." *Commonwealth v. Weiss*, —— Pa. ——, 81 A.3d 767, 806–07 (2013) (citation omitted)."

*Commonwealth v. Patterson*, 91 A.3d 55, 71-72 (Pa. 2-14).

The Appellant has alleged that such evidence is relevant as "it would have given rise to the inference that the complainant's knowledge of sexual activity stemmed from interaction with someone other than [Appellant]." This contention is merely a fishing expedition by Appellant and has no such relevance to the case at hand. In the instant matter, M.M. clearly testified that it was Rich (Appellant's first name is Richard) that was committing these horrendous acts upon her. She went into great detail about the acts as they occurred. There was no such mention of anyone else having done this to her. M.M. never mentioned that a "Percy" or an "Uncle Chris" anywhere during her conversation with the guidance counselor or representative from Children and Youth. Appellant offered no evidence (except merely what the Appellant would have us believe) that any other individual committed these acts upon M.M. The introduction of other adult males other than Appellant who may have been alone with M.M. at one point in time (thus creating the inference that it was not Appellant that harmed this little child) has no relevancy to the outcome of this case.

9

As such, we believe that the Commonwealth's objection to Appellant introducing such evidence was properly sustained.

The Appellant's final allegation of error is that this Court's "sentence was so manifestly excessive as to constitute an abuse of discretion." The Appellant was sentenced to an aggregate term of not less than 20 years nor more than 40 years by having consecutive sentences on Counts 1 and 2. This sentence was within the guidelines. 18 Pa.C.S.A. §3121(e) provides that a person convicted under 3121(c) shall be sentenced to a term of imprisonment which shall be fixed by the court of not more than 40 years. Likewise, 18 Pa.C.S.A. §3123(d) provides that a person convicted under 3123(b) shall be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years.

As set forth in *Commonwealth v. Caldwell*, 177 A.3d 763 (Pa. Super. 2015):

> "When imposing a sentence, the sentencing court must consider the factors set out in 42 [Pa.C.S.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines." *Commonwealth v. Fullin*, 892 A.2d 843, 847–48 (Pa.Super.2006) (internal citations omitted).

> A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa.Super.2010), *appeal denied*, 609 Pa. 685, 14 A.3d 825 (2011). Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa.Super.2012), *appeal denied*, 621 Pa. 677, 75 A.3d 1281 (2013).

> To make it clear, a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

> *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa.Super.2013), *reargument denied* (Nov. 21, 2013), *appeal denied*, 625 Pa. 648, 91 A.3d 161 (2014) (emphasis in original).

10

In the instant matter, Appellant was sentenced within the standard guidelines.[22] Furthermore, as set forth at the time of sentencing, Appellant's conduct violated community standards. Appellant betrayed the trust that was placed in him to safeguard the subject minor child. Appellant shattered the life of this child and forever changed her life. Appellant robbed her of her innocence and took advantage of her vulnerability. M.M. testified that this happened on multiple occasions and that each time it felt 'bad'. Appellant also stole the rest of her family away from her. Her mother and siblings do not believe her and the subject child will never have a complete relationship with her family. She has been ostracized by the only family she knows as a result of Appellant's conduct. Appellant's actions, including vaginal, oral, and possibly anal rape, have not only impacted this child but the community itself. This Court is not sure if this Appellant will ever be able to be rehabilitated but this Court cannot imagine if this were to happen to another little child. In taking everything into consideration, we do not feel that this aggregate sentence is "unduly harsh considering the nature of the crimes and the length of imprisonment." As such, Appellant's sentence, in the aggregate of 20 to 40 years, should stand.

For the foregoing reasons, it is believed that the judgment of sentence was properly entered.

BY THE COURT:

RICHARD A. LEWIS, PRESIDENT JUDGE

**Memorandum date:**
August 26, 2016

Distribution on the following page.

---

[22] For Rape of a Child under 13, with a prior record score of 0, guidelines provide a sentence of 72 months to the statutory limit (up to 40 years' incarceration).

11

DISTRIBUTION
Ryan Lysaght, Esquire – District Attorney's Office (APPEAL)
Michael Sprow, Esquire – District Attorney's Office (APPEAL)
James K. Karl, Esquire, Public Defender's Office ⅛
Court Admin. – Criminal
Superior Court Prothonotary
Clerk of Courts
FILE – Judge Lewis